ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Sungjee Construction Co., Ltd. | ) ASBCA Nos. 62002, 62170 |
| | ) |
| Under Contract No. W91QVN-14-D-0050 | ) |

APPEARANCE FOR THE APPELLANT:        Song Yong Eui, Esq.
                                       Central IP & Law
                                       Seoul, Korea

APPEARANCES FOR THE GOVERNMENT:    Scott N. Flesch, Esq.
                                       Army Chief Trial Attorney
                                       MAJ Mark T. Robinson, JA
                                       Trial Attorney

<u>OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN ON APPELLANT'S
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE</u>

Appellant Sungjee Construction Co., Ltd appeals a contracting officer's termination of its contract for default. In challenging the default termination, Sungjee alleges that the government refused to issue passes that it needed to perform the contract work on Osan Air Base, Republic of Korea, for a total of 352 days during the contract performance period. In the course of discovery, it became apparent that the government could not produce certain documents related to its issuance or non-issuance of passes for Sungjee employees due to their routine destruction by the 51st Security Forces Pass Office. Sungjee filed its Motion for Sanctions for Spoliation of Evidence on December 15, 2020. We deny the motion for the reasons stated below.

<u>STATEMENT OF FACTS FOR PURPOSES OF THE MOTION</u>

On August 4, 2020, Appellant Sungjee Construction Co., Ltd., filed a motion to compel discovery. Sungjee sought an order compelling the government to produce "documents evidencing that the government had issued proper passes and decals to Sungjee which would have allowed Sungjee personnel to access the job site" at Osan Air Base, Republic of Korea. Appellant's task order for repair of officer dormitory building No. 929 was terminated for default on December 20, 2018, and appellant's defense relies at least in part on being able to prove that the government hindered its access to the work site.

On August 21, 2020, the Board conducted a conference call to discuss the appellant's motion and the government's response. Appellant explained that it sought

production of copies of pass requests and passes issued in response to those requests for the period of performance, roughly from August 2016 to August 2018. The government explained that the biometric data listing personnel who had access to the facility during the relevant period, which it had already supplied to appellant, was the only documentation that still exists. The parties agreed that if the government produced a letter confirming that the exact documentation sought by appellant no longer exists, the matter would be resolved.

On November 5, 2020, the government issued its response to detailed questions posed by appellant in a letter dated August 24, 2020. The information supplied included the following facts relevant to this motion: During the relevant period, the office responsible for issuing passes on Osan Air Base was the 51st Fighter Wing Security Forces (SF) located on the base. The contracting office, 411th Contracting Support Brigade (CSB), is not involved in the issuance of passes and does not maintain records related to the issuance of passes. Requests for passes are submitted by the sponsoring agency, in this case the 51st Civil Engineering Squadron (CES), which maintains a running log of all requests received and gives the hard copy of the pass request to the 51st SF to process. The 51st SF keeps hard copies until a final decision to grant or deny the request is made, at which point that decision is entered into the Defense Biometric Identification System (DBIDS). Hard copies of disposed pass requests and issued passes are destroyed by 51st SF on an annual basis, no later than one year from disposition and entry into DBIDS.

On November 26, 2020, appellant filed its second motion to compel discovery. The second motion is identical to the first in most respects, except it includes an acknowledgement of the government's November response affirming that it cannot produce the requested documents because they have been destroyed. Notwithstanding the written confirmation that the government cannot produce the documents, appellant asked the Board to order the government either to produce the documents or "declare in writing that the Government cannot produce the pass-related documents the Appellant has been seeking."

This second motion to compel was followed on December 15, 2020, by appellant's motion for sanctions for spoliation of evidence, in which the appellant asked the Board to draw adverse evidential inferences from the government's inability to produce the requested documents, namely that the Board find that the documents that no longer exist would have supported appellant's position that the government did not issue the passes that were needed by appellant to timely complete the work on the project.

In a conference call on December 17, 2020, the Board discussed the second motion to compel and the motion for sanctions with the parties. The Board asked appellant why it filed the second motion to compel and was told that appellant wanted

the government to "admit" that it has no evidence of issuance of passes. The Board indicated that it would rule on the motions to compel, and requested that the government file an opposition to the motion for sanctions. An Order denying the motions to compel was issued on March 9, 2021.

The government filed its opposition to appellant's motion for sanctions on January 14, 2021. The appellant filed a reply on January 20, 2021, and the government, with leave of the Board (due to the new arguments raised in appellant's reply), filed a sur-reply on February 17, 2021. On February 22, 2021, the appellant moved for leave to respond to the government's sur-reply. This motion was denied by the Board on March 8, 2021.

## DISCUSSION

## Contentions of the Parties

Sungjee asks that the Board find that the government has failed to preserve and has destroyed documents which it had a duty to preserve, and that Sungjee has been prejudiced by this failure which adversely affects its ability to prove that the government improperly prevented proper access to the job site for a total of 352 days. Sungjee further requests that the Board assess sanctions by drawing the adverse inference that the documents, had they been produced, would have demonstrated that the government's delays and failures to timely renew passes denied appellant proper access to the worksite for 352 days out of the original 450 day performance period under the task order.

Sungjee asserted in its initial motion for sanctions that the duty to preserve records can arise one of two ways. First, an applicable regulation or statute may require that the records be maintained for a specific period of time. Second, a duty to preserve also arises when a party knows or should have known that the records may be relevant to future litigation. However, despite acknowledging that the party moving for sanctions for spoliation has the burden of proof, Sungjee did not in its initial motion identify, let alone establish, how the government's destruction of pass-related documents was in violation of either kind of duty.

In its opposition to Sungjee's motion, the government contends that the earliest time litigation could reasonably have been foreseen was March of 2019 when appellant filed its Notice of Appeal with the Board. By that time, it notes, two months had already passed since the 51st SF destroyed the documents as part of its regular course of business. In support, the government proffers the Declaration of Technical Sergeant Cody Hutchison. TSgt Hutchison currently serves as the non-commissioned officer in charge of the 51st SF Pass and Registration Office at Osan Air Base. He states that pass request records are filed until they are no longer

3

needed to support the process for which they are created or received. Thus, if passes for Sungjee personnel were no longer required, expired, or the business relationship had been terminated, pass-related documents would have been destroyed during the annual review in January 2019. In September of 2020, the Army Legal Services Agency asked his office to conduct a search for pass requests and documents pertaining to installation access for Sungjee from August 2016 to December 2018. However, due to the annual process he described, his office no longer had the requested records.

The government further notes that the adverse inference sought by appellant, that the government was responsible for Sungjee's inability to properly access the work site for 352 days, would be a dispositive inference since it would entitle Sungjee to an excusable delay in the contract completion date. The government states that a dispositive adverse inference requires a finding of bad faith, citing *Garco Constr., Inc.*, ASBCA Nos. 57796, 57888, 13-1 BCA ¶ 35,456 at 173,881.

In appellant's reply to the government's opposition, appellant stated for the first time that the 51st SF should have retained the pass-related documents for six years pursuant to Federal Acquisition Regulation (FAR) 4.805, Storage, Handling, and Contract Files. FAR 4.805 contains a table with varying retention periods for contract files, depending on the type of file and the dollar value of the contract in question. The retention period for construction contracts above $2000 and related documents, including successful proposals, is 6 years and three months after final payment. However, appellant does not convincingly argue that base pass-related documents, no matter how important they may be to a contractor's ability to perform, constitute contract files.

Appellant also argues in its reply that a duty to preserve arose because litigation was reasonably foreseeable at the time the government issued its Notice of Termination on December 20, 2018. However, beyond this bare assertion, we are not given a factual basis for concluding that litigation was reasonably foreseeable at this time.

In its sur-reply, the government argues that no duty to preserve the documents existed at the time of their routine destruction in January of 2019, either under FAR 4.805's record retention requirements, or because litigation was reasonably foreseeable at that time. As to the first point, the government states that FAR 4.805 sets forth requirements for contracting offices, contract administration offices, and payment offices to retain their contract files, and does not apply to an office such as the 51st SF, which did not have a contracting function and therefore would not have contract files. As to the second point, the government points out that there would have been no reason to anticipate litigation at the time the notice of termination was issued or the next month when the pass-related records were destroyed, because Sungjee had never alleged any excusable or government delay and, in fact, admitted fault for its delays on numerous

4

occasions in writing, citing the record at Rule 4, tabs 55 and 92, and an email attached to its sur-reply as Ex. A. Therefore, the first time the government could have reasonably foreseen litigation was in March of 2019 when Sungjee filed its Notice of Appeal.

A party moving for sanctions for spoliation of evidence has the burden of proving three elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the evidence, to the extent that a reasonable factfinder could conclude that the evidence would have supported the claims or defenses of the party that sought it. *Garco Constr., Inc.*, ASBCA Nos. 57796, 57888, 13 BCA ¶ 35,456 at 173,879; *Ensign-Bickford Aerospace & Defense Co.*, ASBCA No. 57929, 13 BCA ¶ 35,322 at 173,385. The third element "is often cast in terms of prejudice," in that "it must be shown that the requesting party was prejudiced by the loss of evidence." *ADT Constr. Grp., Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,325.

Further, if the sanctions sought for spoliation are dispositive, before imposing such sanctions the trier of fact must make a determination of bad faith. *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1327 (Fed. Cir. 2011). To make a determination of bad faith, the court must find that the spoliating party intentionally destroyed documents that it knew would be important or useful to its opponent, and the fundamental element of bad faith spoliation is "advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Id.* at 1326. Moreover, to impose dispositive sanctions, it is not enough to find both bad faith and prejudice. In gauging the propriety of such a sanction, the court must take into account (1) the degree of fault of the party who destroyed the evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction that will avoid prejudice to the opposing party but also, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Id.* at 1329.

The Duty to Preserve

For purposes of this motion, we find that the pass-related documents appellant seeks were destroyed in accordance with the then-current document retention policy of the 51st Security Forces office in January 2019. In addition, we find the longer retention periods cited by appellant to be inapplicable inasmuch as they do not apply to base pass offices, and records pertaining to base access such as those sought by appellant are not contract files. Thus, appellant has not established the existence of any regulatory or contractual duty to retain the records beyond the time when they were destroyed.

5

When litigation is "reasonably foreseeable" is a flexible, fact-specific standard that allows a court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry. *Micron*, 645 F.3d at 1320. It is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable person in the same factual circumstances would have reasonably foreseen litigation. *Id.* Sungjee carries the burden of proof on its motion, but points us to nothing more than its assertion that the government should have known that litigation was reasonably foreseeable when it issued the Notice of Termination for Default on December 20, 2018. We do not think that the mere possibility of litigation that accompanies government actions such as notices of default termination or denials of claims can be held to trigger a duty of preservation that does not otherwise exist. Moreover, the government has supplied us with facts indicating that a reasonable person in the government's position could not have reasonably foreseen litigation until after Sungjee filed its Notice of Appeal on March 18, 2019. Appellant has failed to carry its burden of proof on this point. We find that litigation was not reasonably foreseeable at the time the documents were destroyed.

Culpable State of Mind and Prejudice

Even if we could find that litigation was reasonably foreseeable during the few weeks' span between the issuance of the Notice of Termination and the routine destruction of the documents, Sungjee has not met its burden of proof on the other two elements of spoliation, a culpable state of mind and prejudice. As to culpable state of mind, to us it is significant that the documents were destroyed as a matter of routine policy during the annual review in January of 2019. Had the annual review been scheduled for, say, June, but the documents were destroyed in January, further inquiry into the reason for the early destruction might unearth evidence of culpable state of mind. But Sungjee has not drawn our attention to any evidence that the documents were destroyed for any reason other than timely housekeeping.

As for prejudice, while it is true that the evidence Sungjee seeks appears relevant to its asserted defense, Sungjee offers us nothing from which we can find that the destroyed evidence would have been favorable to its position. We also have no explanation for why Sungjee does not have its own relevant evidence to offer to satisfy its burden of proof. Typically, parties to a contract each keep their own files, and document any developments that may be relevant to their respective rights and responsibilities. If the government's failure to issue needed passes was indeed the reason Sungjee could not timely perform, it seems highly unlikely that Sungjee would not carefully document this fact, so that at trial it could support its defense against the eventual termination for default with its own contemporaneous records. In short, we cannot find that the government's routine document destruction, as opposed to Sungjee's apparent failure to create and keep contemporaneous records, is the cause of any difficulty Sungjee may be experiencing in meeting its burden of proof.

6

Given that Sungjee has not met its burden of proof to show that any spoliation occurred, we do not reach the issues of dispositive sanctions and bad faith.

CONCLUSION

Appellant's motion for sanctions for spoliation of evidence is denied.

Dated: March 23, 2021

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62002, 62170, Appeals of Sungjee Construction Co., Ltd., rendered in conformance with the Board's Charter.

Dated: March 24, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

7